
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| § | | |
| **KHAIRUN J. BHAI** § | Case No. 15-41547 | |
| xxx-xx-8599 § | | |
| 3946 Luke Lane, Carrollton, TX 75007 § | | |
| § | | |
| Debtor § | Chapter 7 | |
| § | | |

| | | |
|---|---|---|
| MONEYGRAM PAYMENT § | | |
| SYSTEMS, INC. § | | |
| § | | |
| Plaintiff § | | |
| § | | |
| v. § | Adversary No. 15-4097 | |
| § | | |
| KHAIRUN J. BHAI § | | |
| § | | |
| Defendant § | | |

## MEMORANDUM OF DECISION REGARDING
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT[1]

ON THIS DATE the Court considered the Motion for Summary Judgment (the

"Motion") filed by the Plaintiff, MoneyGram Payment Systems, Inc. ("MoneyGram"),

and the response filed thereto by the Defendant, Khairun J. Bhai ("Bhai" or the

"Defendant"). The original complaint filed in this adversary proceeding claims that the

debt allegedly owed to the Plaintiff by the Debtor-Defendant should be declared

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or other evidentiary doctrines applicable to the specific parties in this proceeding.

nondischargeable either pursuant to 11 U.S.C. § 523(a)(4) as a debt arising from a defalcation while serving in a fiduciary capacity or from embezzlement, or pursuant to § 523(a)(6), which excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." Upon due consideration of the pleadings, the proper summary judgment evidence submitted by the parties, and the relevant legal authorities, the Court concludes that the Plaintiff's Motion for Summary Judgment should be granted in part and denied in part. This memorandum of decision disposes of all issues before the Court.[2]

## Factual and Procedural Background[3]

MoneyGram contracts with persons and entities to sell money transfer services and money orders to the general public. Funds collected from the sale of MoneyGram's services are held in trust by the contracted persons or entities for the benefit of MoneyGram. The Defendant, Bhai, has been the sole director, officer and shareholder of a closely-held corporation known as 786 KNJ 2009, Inc. ("KNJ, Inc."), which operated a beverage store known as KNJ Beverage ("Beverage") in Lewisville.[4]

---

[2] This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I) and (O) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

[3] The facts presented are those the Court believes to be uncontested or are imposed by applicable provisions of claim preclusion or admission. They are presented only as a general factual background to the legal claims asserted in the case. This section is not intended to resolve any disputed or contested facts.

[4] Defendant's admission to the allegations of ¶ 2 of the Plaintiff's complaint as set forth in ¶ 3 of Defendant's Answer [dkt #5].

On August 19, 2010, MoneyGram and KNJ, Inc. entered into a Master Trust Agreement involving money transfer services and sales of money orders to the general public that would be rendered by KNJ, Inc. d/b/a Beverage on MoneyGram's behalf.[5] Bhai executed that trust agreement in a representative capacity on behalf of KNJ, Inc.[6] Under the agreement, MoneyGram authorized the sale of its services by KNJ, Inc. KNJ, Inc. would hold the funds collected from the customer in trust for MoneyGram and earn a set fee or percentage fee of the monetary value of the services.[7] Bhai additionally, in an individual capacity, executed and delivered a Personal Indemnity and Guaranty to MoneyGram.[8] According to the Personal Indemnity and Guaranty, Bhai "absolutely, unconditionally and irrevocably guarantees the punctual performance of all objections of every kind, nature or description of Trustee, whether now existing or hereafter arising, under the Agreement" in order "[t]o induce Company [MoneyGram] to enter into or continue the Master Trust Agreement."[9]

On September 1, 2010, a few days after the Trust Agreement was signed, Bhai executed the Acknowledgment of Receipt of Stipulated Order, Acknowledgment of

---

[5] Defendant's admission to the allegations of ¶ 7 of the Plaintiff's complaint as set forth in ¶ 6 of Defendant's Answer [dkt #5].

[6] Attachment A-1 to Ex. A. to Plaintiff's Motion at 10.

[7] Defendant's admission to the allegations of ¶ 7 of the Plaintiff's complaint as set forth in ¶ 6 of Defendant's Answer [dkt #5].

[8] Attachment A-1 to Ex. A. to Plaintiff's Motion at 11.

[9] *Id*.

Receipt of Fraud Compliance Training, and Anti-Money Laundering Overview Adoption of Anti-Money Laundering Compliance Program (the "Fraud Compliance Agreement") as owner and director of KNJ, Inc. d/b/a Beverage.[10] The Fraud Compliance Agreement instructed KNJ, Inc. as MoneyGram's agent to "NEVER send a 'test' or 'training' transaction" as "MoneyGram will never ask you to send a test transaction."[11] Additionally, the Fraud Compliance Agreement specifically provided KNJ, Inc. with the following example of agent fraud: "A suspect calls your store representing himself as a MoneyGram employee and asks your employee to process a test transaction."[12]

Notwithstanding that specific directive, there was a failure of compliance with the Fraud Compliance Agreement. On several occasions in 2014, it is uncontroverted that KNJ, Inc. complied with the telephonic directives of a caller, who represented himself to be a MoneyGram employee, and requested the completion of certain test transfers. These transfers collectively resulted in unauthorized aggregate transfers of $20,078.84 by KNJ, Inc. to the unknown caller.[13]

MoneyGram subsequently issued a demand to KNJ, Inc. for restitution of the transferred funds and upon Bhai in the capacity as Guarantor.[14] When the demand

---

[10] Attachment B-2 to Ex. A. to Plaintiff's Motion at 14-16.

[11] *Id.* at 32.

[12] *Id.*

[13] Ex. A. to Plaintiff's Motion at 3.

[14] Attachment A-4 to Ex. A. to Plaintiff's Motion.

remained unsatisfied, MoneyGram filed suit against KNJ, Inc. and Bhai in the 211th Judicial District Court of Denton County, Texas on February 13, 2015 (the "State Court Litigation").[15] Six months later, at 1:24 p.m. on August 28, 2015, the state court entered summary judgment in favor of MoneyGram and against KNJ, Inc. d/b/a Beverage and against Bhai in the amount of $20,078.84, plus pre-judgment and post-judgment interest, costs of court, and attorneys' fees.[16] At 1:26 p.m., two minutes after the summary judgment was entered in Denton, Bhai filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in Plano.[17]

On December 3, 2015, MoneyGram filed its original Complaint in this adversary proceeding[18] During the scheduled discovery period,[19] Bhai was served with MoneyGram's Request for Admissions.[20] Bhai did not respond or object to the various requests.[21] In fact, Bhai failed to respond to any of MoneyGram's discovery requests.

---

[15] Defendant's admission to the allegations of ¶ 18 of the Plaintiff's complaint as set forth in ¶ 6 of Defendant's Answer [dkt #5].

[16] Defendant's admission to the allegations of ¶ 19 of the Plaintiff's complaint as set forth in ¶ 6 of Defendant's Answer [dkt #5].

[17] Dkt. #1.

[18] *Voluntary Petition* filed by the Debtor on August 28, 2013 [dkt #1] in case no. 15-41547.

[19] Following an initial management conference on April 5, 2016, the Court issued a scheduling order with a discovery deadline of September 30, 2016. [dkt #9].

[20] Defendant's admission in ¶ 1 of the Defendant's Motion to Withdraw and Set Aside Deemed Admissions filed on September 30, 2016 [dkt #23].

[21] *Id.*

On September 2, 2016, MoneyGram filed the present motion for summary judgment, arguing that under the principles of collateral estoppel, all of the facts necessary to render Bhai's debt nondischargeable under 11 U.S.C. § 523(a)(4) and (a)(6) had been established either in the State Court Litigation or by Bhai's deemed admissions.[22] Bhai filed a response to the summary judgment motion on October 1, 2016, contending that collateral estoppel cannot be properly applied since the bankruptcy filing occurred virtually simultaneously with the entry of the State Court Judgment.[23]

As a prelude to the opposition to the summary judgment, Bhai filed a motion to withdraw the deemed admissions on September 21, 2016[24] which was subsequently opposed by MoneyGram. A hearing on the motion to withdraw the deemed admissions was conducted on December 15, 2016 at which time the Court took that particular matter under advisement. On this date, the Court has entered an order wherein Bhai's motion to withdraw and set aside the deemed admissions has been granted in part and denied in part, allowing only six of the 21 admissions to be withdrawn due solely to the impropriety of the underlying requests and not upon any entitlement to relief based upon the Defendant's conduct.

---

[22] Dkt. #16.

[23] Dkt. #28.

[24] Dkt. #23.

**Discussion**

*Summary Judgment Standards and Process*

The Plaintiff brings its Motion for Summary Judgment in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056. That rule incorporates Federal Rule of Civil Procedure 56 which provides that summary judgment shall be rendered "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[25]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion.[26] As a movant, a party asserting that a fact cannot be genuinely disputed must support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[27]

The operation of the summary judgment standard depends upon which party will bear the burden of persuasion at trial. If, as in this case, the burden of persuasion at trial

---

[25] FED. R. CIV. P. 56(a).

[26] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[27] FED. R. CIV. P. 56(c).

is on the moving party, "that party must support its motion with credible evidence–using any of the materials specified in Rule 56(c)–that would entitle it to a directed verdict if not controverted at trial."[28]

If a summary judgment motion is properly supported, a party opposing the motion may not merely rest upon the mere allegations or denials in its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary.[29] The substantive law will identify which facts are material.[30] In so demonstrating, the non-movant must show more than a "mere disagreement" between the parties,[31] or that there is merely "some metaphysical doubt as to the material facts."[32] Neither are unsubstantiated, conclusory assertions in the response sufficient to raise a genuine issue of material fact.[33] However, "[t]he issue of material fact which must be present in order to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed

---

[28] *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting); *Timmer v. Michigan Dept. of Commerce*, 104 F.3d 833, 843 (6th Cir. 1997); *Thom v. State Farm Lloyds*, 10 F.Supp.2d 693, 698 (S.D. Tex. 1997).

[29] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[30] *Id.*

[31] *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1413 (5th Cir. 1993).

[32] *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

[33] *Jacobs v. City of Port Neches,* 7 F.Supp.2d 829, 833 (E.D. Tex. 1998) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[34]

The record presented is reviewed in the light most favorable to the non-moving party.[35] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"[36] Further, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[37] Essentially, if a non-movant fails to set forth specific facts that present a triable issue on any relevant issues, his claims should not survive summary judgment.[38]

In this case, the Plaintiff bears the ultimate burden as to the nondischargeability of the debt. Thus, the Plaintiff is entitled to a summary judgment only if there exists no genuine issue of material fact as to each essential element under §§ 523(a)(4) and 523(a)(6). The motion for summary judgment under consideration herein seeks judgment as a matter of law through the application of the principles of collateral estoppel and the deemed admissions arising in this litigation. MoneyGram claims that such facts as established form the basis for a determination that the underlying judgment debt is

---

[34] *Anderson*, 477 U.S. at 248-49.

[35] *Matsushita,* 475 U.S. at 587.

[36] *Id.* at 587 (*citing First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

[37] *Anderson,* 477 U.S. at 248.

[38] *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 494 (5th Cir. 2001).

nondischargeable in Bhai's Chapter 7 bankruptcy case. Resolving this question requires that the Court first determine the applicability of the doctrine itself. If collateral estoppel applies, any relevant factual findings (i.e., related to the required elements for nondischargeability) regarding the actions of the Defendant in this common set of operative facts upon which the state court judgment is based should not be disturbed here. The Court applies those findings to the required elements for nondischargeability to ascertain what factual issues, if any, remain. If collateral estoppel does not apply, and if the deemed admissions are insufficient to supply any missing facts, the Plaintiff's motion must be wholly denied.

*Standards for Issue Preclusion (Collateral Estoppel)*

"Collateral Estoppel or, in modern usage, issue preclusion, 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'"[39] In other words, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."[40] "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves

---

[39] *Schiro v. Farley*, 510 U.S. 222, 232 (1994) (quotations omitted).

[40] *Montana v. U. S.*, 440 U.S. 147, 153 (1979) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979)).

judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."[41]

In the bankruptcy dischargeability context, "parties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to dischargeability" and satisfy the elements thereof.[42] In other words, when an issue that forms the basis for the creditor's theory of nondischargeability has been actually litigated in a prior proceeding, neither the creditor nor the debtor may relitigate those grounds.[43] While the doctrine of issue preclusion applies in bankruptcy dischargeability litigation, a bankruptcy court retains exclusive jurisdiction to determine whether a debt is dischargeable.[44]

The inquiry into the preclusive effect of a state court judgment is guided by the full faith and credit statute, which states that "judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."[45] Thus, federal courts look to the principles of issue preclusion utilized by the forum state in which the prior judgment was entered.[46] Because the judgment against the Defendant was entered in a Texas state court,

---

[41] *Id.* at 153-54.

[42] *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 270 (5th Cir. 2005) (quotations omitted).

[43] *RecoverEdge, L.P. v. Pentecost,* 44 F.3d 1284, 1294 (5th Cir. 1995).

[44] *Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991).

[45] 28 U.S.C. § 1738 (1994).

[46] *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 181 (5th Cir. 1997).

this Court applies the Texas law of issue preclusion.[47]

Collateral estoppel under Texas law prevents the relitigation of identical issues of law or fact that were actually litigated and were essential to the final judgment in a prior suit.[48] "The doctrine applies when the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit."[49] Specifically, a party is collaterally estopped from raising an issue under Texas law when: (1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case.[50] "Once an actually litigated and essential issue is determined, that issue is conclusive in a subsequent action between the same parties."[51]

In the context of issue preclusion, the terms "issue" and "fact" are interchangeable. The purpose of the reviewing court is to determine the specific facts brought that were already established through full and fair litigation. As stated in *Fielder v. King (Matter of King),* 103 F.3d 17 (5th Cir. 1997):

---

[47] *Pancake v. Reliance Ins. Co. (In re Pancake)*, 106 F.3d 1242, 1244 (5th Cir. 1997); *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195 (5th Cir. 1996).

[48] *Tex. Dept. of Public Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001).

[49] *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1991) (citing *Tarter v. Metropolitan Sav. & Loan Ass'n*, 744 S.W. 926, 927 (Tex. 1988).

[50] *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984); *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 817 (Tex. App.– Dallas 2012, no pet.).

[51] *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985).

> Issue preclusion will prevent a bankruptcy court from determining dischargeability issues for itself only if 'the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question . . . and the facts supporting the court's findings are discernible from that court's record. Collateral estoppel applies in bankruptcy courts only if, *inter alia*, the first court has made . . . factual findings on the identical dischargeability issue in question – that is, an issue which encompasses the same prima facie elements as the bankruptcy issue.[52]

As the party asserting the preclusive effect of the findings arising from the State Court Litigation against Bhai, MoneyGram has the burden of proof on all elements of collateral estoppel. However, such a prospect becomes rather problematic when the underlying facts arise from a summary judgment context. While the summary judgment evidence presented by MoneyGram clearly establishes that the parties to the current dispute were also adversaries in the State Court Litigation and that a judgment in a specific amount was entered against Bhai, that evidence fails to identify the precise facts arising from the summary judgment process regarding Bhai's individual liability that would be subject to preclusion principles. It fails to reveal how MoneyGram established its causes of action or its entitlement to judgment against Bhai as a matter of law. There is no listing of established facts. There is no presentation of the state court pleadings or the summary judgment evidence tendered to the state court that identifies even an assertion as to what material facts were deemed to exist without dispute. All that has

---

[52] *Id.* at 19 (citing *Dennis v. Dennis (Matter of Dennis),* 25 F.3d 274, 278 (5th Cir. 1994) (brackets and quotations omitted).

been presented is the Final Summary Judgment itself which contains only the most generic of descriptions regarding the state court's process which resulted in the entry of the summary judgment. It is incumbent upon MoneyGram to identify those undisputed material facts upon which the summary judgment was based. Without them, the only significant issue regarding Bhai's liability in an individual capacity which is precluded from relitigation under the principles of collateral estoppel is the existence of the debt owing by Bhai in an individual capacity to MoneyGram. That singular fact is insufficient to warrant the granting of summary judgment to MoneyGram under any of the § 523(a) exceptions to discharge which it has alleged: under 11 U.S.C. § 523(a)(4) as a debt arising from fraud or defalcation while acting in a fiduciary capacity,[53] or arising from

---

[53] The dischargeability exception for fraud or defalcation while acting in a fiduciary capacity "was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." *Miller v. J.D. Abrams Inc. (Matter of Miller),* 156 F.3d 598, 602 (5th Cir. 1998), *cert. denied*, 526 U.S. 1016 (1999) (internal quotations omitted). Whether the actions of an individual were taken in a fiduciary capacity for the purposes of § 523(a)(4) is determined by federal law. *FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 620 (5th Cir. 2011); yet "state law is important in determining whether or not a trust obligation exists." *Gupta v. Eastern Idaho Tumor Institute, Inc. (In re Gupta)*, 394 F.3d 347, 350 (5th Cir. 2004). [T]he concept of fiduciary under § 523(a)(4) is narrower than it is under general common law. Under § 523(a)(4), "fiduciary" is limited to instances involving express or technical trusts. The purported trustee's duties must, therefore, arise independent of any contractual obligation. The trustee's obligations, moreover, must have been imposed prior to, rather than by virtue of, any claimed misappropriation or wrong. *Texas Lottery Comm'n v. Tran (In re Tran),* 151 F.3d 339, 342-43 (5th Cir. 1998). Once that capacity has been established, a "defalcation" for the purposes of § 523(a)(4) "includes a culpable state of mind requirement" involving "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock v. BankChampaign, N.A.*, ___U.S.___, 133 S.Ct. 1754, 1757, 185 L.Ed.2d 922 (2013). According to *Bullock*, "where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term [defalcation] requires an intentional wrong." *Id*. at 1759. Such an intentional wrong encompasses not only conduct which the fiduciary knows is improper, but it also encompasses reckless conduct, such as when a fiduciary "consciously disregards (or is willfully blind to) a substantial and unjustifiable risk" that his conduct will result in a breach of fiduciary duty. *Id*.

embezzlement,[54] or pursuant to § 523(a)(6) as a debt "for willful and malicious injury."[55] Similarly, those particular deemed admissions which have been allowed to stand against Bhai under Rule 36(b)[56] are insufficient to establish any of the elements of the § 523(a) subsections pled by MoneyGram.

*Issues Precluded from Re-litigation*

For the foregoing reasons, Plaintiff's Motion for Summary Judgment, to the extent

---

[54] "Embezzlement is defined for the purposes of § 523(a)(4) as the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *Miller v. J.D. Abrams Inc. (Matter of Miller),* 156 F.3d 598, 602 (5th Cir. 1998), *cert. denied*, 526 U.S. 1016 (1999). "Given that a debtor has lawful control of the property, embezzlement then requires three elements: (1) appropriation of funds by the debtor; (2) for the debtor's use or benefit; and (3) with fraudulent intent." *Andra Group, L.P. v. Gamble-Ledbetter (In re Gamble-Ledbetter)*, 419 B.R. 682, 696 (Bankr. E.D. Tex. 2009) *(citing Rainey v. Davenport (In re Davenport),* 353 B.R. 150, 200 (Bankr. S.D. Tex. 2006)). For purposes of the embezzlement exception to discharge, a fraudulent intent is "an intent to deceive another person and thereby induce such other person to transfer, alter or terminate a right with respect to property." *Winn v. Holdaway (In re Holdaway)*, 388 B.R. 767, 778 (Bankr. S.D. Tex. 2008); *Soisson v. Hillebrandt (In re Hillebrandt)*, 2011 WL 2447738 at *20 (Bankr. S.D. Miss., June 15, 2011).

[55] Liability under § 523(a)(6) requires that an actor inflict a deliberate or intentional injury, not merely that an actor take a deliberate or intentional act that leads to injury. *Kawaauhau v. Geiger*, 523 U.S. 57 (1998). As subsequently interpreted by the Fifth Circuit, a recovery under § 523(a)(6) for a "willful and malicious injury" now requires proof that such injury arose from a deliberate and intentional act by a debtor that was inflicted under circumstances evidencing either: (1) an objective substantial certainty of harm; or (2) a subjective motive to cause harm. *Miller v. J. D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998), *cert. denied, Miller v. J.D. Abrams, Inc.*, 526 U.S. 1016 (1999); *see also Caton v. Trudeau (In re Caton),* 157 F.3d 1026, 1029 (5th Cir. 1998). The "objective substantial certainty" prong "is a recognition of the evidentiary reality that defendants rarely admit malicious intent. A court is thus expected to analyze whether the defendant's actions, which from a reasonable person's standpoint were substantially certain to cause harm, are such that the court ought to infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff. *Mann Bracken, LLP v. Powers (In re Powers)*, 421 B.R. 326, 334-35 (Bankr. W.D. Tex. 2009), citing *Berry v. Vollbracht (In re Vollbracht)*, 276 F. App'x. 360, 362 (5th Cir. 2007).

[56] Contemporaneous with the issuance of this memorandum, the Court has entered an *Order Granting in Part and Denying in Part Defendant's Motion to Withdraw and Set Aside Deemed Admissions* in this adversary proceeding.

that it requests judgment as a matter of law on all counts contained in Plaintiff's Complaint, must be denied. Several genuine issues of material fact that are critical to the establishment of each element of each of the asserted subsections exist. These issues of fact are not precluded from litigation under the principles of issue preclusion nor are they established through the deemed admissions of the Debtor-Defendant in this case. However, certain facts have been established that are germane to the Plaintiff's complaint. The following facts have been established in this proceeding either through issue preclusion or through the deemed admissions and will not be relitigated at the trial of the adversary complaint:

1. The MoneyGram Master Trust Agreement was executed by 786 KNJ 2009, Inc. d/b/a KNJ Beverage as Trustee.

2. Khairun Bhai signed the MoneyGram Master Trust Agreement sole ly in a representative capacity as a corporate director of 786 KNJ 2009, Inc.

3. The MoneyGram Master Trust Agreement by and between MoneyGram and KNJ, Inc. became effective on August 19, 2010 upon its execution by MoneyGram.

4. 786 KNJ 2009, Inc. d/b/a KNJ Beverage owed MoneyGram a fiduciary duty pursuant to the Master Trust Agreement.[57]

5. On September 1, 2010, 786 KNJ, Inc. executed the Acknowledgment of Receipt of Stipulated Order, Acknowledgment of Receipt of Fraud Compliance Training, and Anti-Money Laundering Overview Adoption of Anti-Money Laundering Compliance Program (the "Fraud Compliance Agreement") under which

---

[57] Deemed admission #7 pursuant to that certain *Order Granting in Part and Denying in Part Defendant's Motion to Withdraw and Set Aside Deemed Admissions* entered in this adversary proceeding on January 31, 2017 (all references regarding deemed admissions contained herein refer to this Order). All of the deemed admissions referenced in the Order are not referenced herein because some are subsumed in other deemed admissions.

   MoneyGram instructed KNJ, Inc. that a test transaction involving the transfer of money would never be given by MoneyGram.

6.  The Fraud Compliance Agreement contained MoneyGram's instruction that KNJ, Inc. should never comply with any request for a test or training transaction involving a transfer of funds.

7.  Khairun Bhai, in an individual capacity, executed and delivered a Personal Indemnity and Guaranty to MoneyGram.

8.  According to the guaranty agreement, Khairun Bhai, in an individual capacity, "absolutely, unconditionally and irrevocably guarantee[d] the punctual performance of all objections of every kind, nature or description of Trustee, whether now existing or hereafter arising, under the Agreement."[58]

9.  At all material times to this dispute, Khairun Bhai was the director and shareholder of 786 KNJ 2009, Inc. d/b/a KNJ Beverage and responsible for its management, control and supervision and served as guarantor of the proper performance of the corporation's duties to MoneyGram.[59]

10.  On several occasions in 2014, a person identifying himself as "Kevin" telephoned KNJ Beverage, represented himself to be a MoneyGram employee, and asked that test transfers be conducted.[60]

11.  KNJ, Inc. complied with the telephonic requests and conducted test transactions in 2014 at "Kevin's" request.[61]

12.  By complying with the telephonic requests for test transactions, 786 KNJ 2009, Inc. d/b/a KNJ Beverage breached its fiduciary duty to MoneyGram.[62]

---

[58] Defendant's admission to the allegations of ¶ 10 of the Plaintiff's complaint as set forth in ¶ 6 of Defendant's Answer [dkt #5].

[59] Deemed admission #6.

[60] Deemed admission #15.

[61] Deemed admission #16.

[62] Deemed admission #12.

13. 786 KNJ 2009, Inc. d/b/a KNJ Beverage failed to account for all trust funds due and owing to MoneyGram.

14. KNJ, Inc.'s compliance with the telephonic requests for test transactions constituted a breach of the Fraud Compliance Agreement.[63]

15. Allowing the breach of fiduciary duty by 786 KNJ 2009, Inc. d/b/a KNJ Beverage constituted a breach of the guaranty obligation assumed by Khairun Bhai in an individual capacity.[64]

16. On February 13, 2015, MoneyGram filed a lawsuit against KNJ, Inc. and Bhai in the 211th Judicial District Court in and for Denton County, Texas under cause no. 15-01320-211 in a cause of action styled *MoneyGram Payment Systems, Inc. vs. 786 KNJ 2009, Inc. d/b/a KNJ Beverage and d/b/a Fitzhugh Mart, and Khairun Bhai*, seeking recovery of the missing trust funds and other related remedies.[65]

17. Khairun Bhai and MoneyGram were thereby cast as adversaries in the State Court Litigation.[66]

18. Pursuant to a Final Summary Judgment entered on August 28, 2015 by the 211th Judicial District Court in and for Denton County, Texas, the Defendant, Khairun Bhai, owes a debt to the Plaintiff, MoneyGram Payment Systems, Inc., in the amount of $29,002.08, plus undesignated court costs, and post-judgment interest at the rate of 5% per annum from August 28, 2015.[67]

19. The Final Summary Judgment entered against Khairun Bhai on August 28, 2015 by the 211th Judicial District Court in and for Denton County, Texas is now a final judgment.[68]

---

[63] Deemed admission #19.

[64] Deemed admission #14.

[65] Defendant's admission to the allegations of ¶ 18 of the Plaintiff's complaint as set forth in ¶ 6 of Defendant's Answer [dkt #5].

[66] Deemed admission #2.

[67] Defendant's admission to the allegations of ¶ 19 of the Plaintiff's complaint as set forth in ¶ 6 of Defendant's Answer [dkt #5].

[68] Deemed admission #1.

20. The judgment debt owed by Khairun Bhai in an individual capacity as evidenced by the Final Summary Judgment remains unpaid.[69]

## Conclusion

Based upon the Court's consideration of the pleadings, the evidence submitted therewith, the relevant legal authorities, and for the reasons set forth herein, the Court finds that Plaintiff's Motion for Summary Judgment in the above-referenced adversary proceeding must be granted in part and denied in part. MoneyGram failed to demonstrate entitlement to judgment as a matter of law regarding the nondischargeability of the judgment debt (or any portion thereof) owed to it by the Debtor, Khairun Bhai, and significant genuine issues of material fact remain regarding the role of the Debtor in the controversy and the claims of nondischargeability under §§ 523(a)(4) and (a)(6) asserted by the Plaintiff that must be determined through a trial on the merits. Summary judgment as to the relief sought by the Complaint must therefore be denied.

Some material factual issues, however, either were fully and fairly litigated in the prior state court litigation or have been established through the summary judgment evidence tendered to the Court, including the particular deemed admissions which the Court has allowed to stand against the Debtor-Defendant. MoneyGram is therefore entitled to a partial summary judgment pursuant to Rule 56(g) on some factual issues. An order consistent with this opinion shall be entered.

Signed on 01/31/2017

---

[69] *See supra* note 13.

-19-

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE