

EOD

12/21/2017

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| § | | |
| **KHAIRUN J. BHAI** § | Case No. 15-41547 | |
| xxx-xx-8599 § | | |
| § | | |
| Debtor § | Chapter 7 | |
| § | | |

| | | |
|---|---|---|
| MONEYGRAM PAYMENT § | | |
| SYSTEMS, INC. § | | |
| § | | |
| Plaintiff § | | |
| § | | |
| v. § | Adversary No. 15-4097 | |
| § | | |
| KHAIRUN J. BHAI § | | |
| § | | |
| Defendant § | | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

Upon trial of the complaint filed by the Plaintiff, MoneyGram Payment Systems, Inc., seeking a determination of whether a debt owed to it by the Debtor-Defendant, Ms. Khairun J. Bhai, is dischargeable, the Court issues the following findings of fact and conclusions of law. The Plaintiff contends that the debt is nondischargeable under the alternative grounds set forth in 11 U.S.C. §523(a)(4) and (a)(6). After the trial and a period of post-trial briefing, the Court took the matter under advisement. This memorandum disposes of all issues pending before the Court.

---

[1] These findings of fact and conclusions of law are not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issues preclusion, and the law of the case or as to other applicable evidentiary doctrines.

# FINDINGS OF FACT

1. 786 KNJ 2009, Inc. ("KNJ, Inc.") owns and operates a convenience store in Denton, Texas called KNJ Beverage.

2. At all material times to this dispute, the Defendant, Ms. Khairun Bhai ("Ms. Bhai" or the "Defendant"), was the sole director and sole shareholder of KNJ, Inc. and responsible for its management, control and supervision.[2]

3. KNJ, Inc. over the years has employed only the Defendant and her husband, Jallaludin Bhai ("Mr. Bhai").[3]

4. In 2010 KNJ, Inc. entered into an agreement with the Plaintiff, MoneyGram Payment Systems, Inc. ("MoneyGram") to provide MoneyGram's services.

5. MoneyGram contracts with persons and entities to sell money transfer services and money orders to the general public. Funds collected from the sale of MoneyGram's services are held in trust by the contracted persons or entities for the benefit of MoneyGram.[4]

6. On August 19, 2010, KNJ, Inc. executed a *Master Trust Agreement* with MoneyGram under which KNJ, Inc. would serve as Trustee. The Defendant signed the Master Trust Agreement solely in a representative capacity as a corporate director of KNJ, Inc.[5]

7. The *Master Trust Agreement* provided as follows:

> 5. Duty of Care. Trustee will safeguard the Trust Funds and all Supplies with the highest degree of care and will take such precautions as a prudent Trustee would take to safeguard its own cash. Trustee will report to Company by telephone and confirm by fax immediately upon discovery of any lost, stolen, misappropriated, seized or forfeited Trustee Funds or

---

[2] *Id.* at ¶ 9.

[3] ¶ 21 of the Stipulated Facts set forth in the approved Joint Pre-Trial Order ("PTO") entered in this adversary proceeding on August 22, 2017 [dkt #63].

[4] *Memorandum of Decision Regarding Plaintiff's Motion for Summary Judgment* [dkt #43] at 2.

[5] Attachment A-1 to Ex. 1 at 10.

> Supplies (including money orders and/or DeltaGrams) and shall provide Company with all other information relating to the event (including serial numbers for blank instruments).
>
> 6. Liability. Trustee is liable to pay to Company all Trust Funds in all circumstances. Trustee is liable for any lost, missing or stolen Trust Funds whether or not Trustee is negligent or at fault and regardless of how the Trust Funds became lost, missing, or stolen, until good funds are received by Company.[6]

8. Thus, KNJ, Inc. owed MoneyGram a fiduciary duty pursuant to the terms of the *Master Trust Agreement*.[7]

9. Under the agreement, MoneyGram authorized the sale of its services by KNJ, Inc. KNJ, Inc. would hold the funds collected from the customer in trust for MoneyGram and earn a set fee or percentage fee of the monetary value of the services.[8]

10. In support of the corporate execution of the *Master Trust Agreement*, the Defendant, in an individual capacity, was required to execute and deliver a *Personal Indemnity and Guaranty* to MoneyGram.[9]

11. According to the guaranty agreement, "Guarantor [Defendant] absolutely, unconditionally and irrevocably guarantees the punctual performance of all obligations of every kind, nature or description of Trustee, whether now existing or hereafter arising, under the Agreement."[10]

---

[6] *Id*. at 2.

[7] PTO at ¶¶ 1-4.

[8] Defendant's admission to the allegations of ¶ 7 of the Plaintiff's complaint as set forth in ¶ 6 of Defendant's Answer [dkt #5].

[9] PTO at ¶ 7.

[10] *Id.* at ¶ 8.

12. On September 1, 2010, KNJ, Inc. executed the *Acknowledgment of Receipt of Stipulated Order, Acknowledgment of Receipt of Fraud Compliance Training, and Anti-Money Laundering Overview Adoption of Anti-Money Laundering Compliance Program* (the "Fraud Compliance Agreement") under which MoneyGram confirmed to KNJ, Inc. that a test transaction involving the transfer of money would never be given by MoneyGram, and that KNJ, Inc. should never comply with any request for a test or training transaction involving the transfer of funds.[11]

13. The Fraud Compliance Agreement required KNJ, Inc. to appoint a compliance officer.[12] The Defendant assumed responsibility for assuring that all of the policies and procedures of the Fraud Compliance Agreement were followed and for training and education of KNJ, Inc. employees.

14. The Defendant made certain that the only other KNJ, Inc. employee, her husband Mr. Jallaludin Bhai, knew what the Fraud Compliance Agreement required.[13]

15. There is no evidence of ongoing compliance training by KNJ, Inc. regarding the Fraud Compliance Agreement after 2010, or that MoneyGram ever sought to confirm the existence of such ongoing compliance training.

16. Three and one-half years later, in January 2014, KNJ, Inc. was experiencing difficulties with the device with which it conducted MoneyGram transactions and the Defendant's spouse, Jallaludin Bhai, telephoned the toll-free number listed on the MoneyGram device for assistance with the defective device.

17. After Mr. Bhai's initial contact with MoneyGram regarding the device problems, he subsequently received a telephone call from a person identifying himself as a MoneyGram employee named "Kevin" who indicated his belief that the device problem had been resolved and then asked for a test transaction to be conducted for confirmation.[14]

---

[11] *Id.* at ¶ 5-6; Ex. 6.

[12] *Id.* at ¶ 22.

[13] *Id.* at ¶ 24.

[14] *Id.* at ¶ 10. Mr. Bhai testified without contradiction that the caller ID pertaining to the telephone call from "Kevin" indicated the call was initiated at MoneyGram. No explanation was provided as to how a person unaffiliated with MoneyGram would have known of the MoneyGram device problem at KNJ or the resulting inquiry regarding its solution.

18. The calls to KNJ, Inc. were answered by Jallaludin Bhai, who complied with the requests, and conducted numerous test transactions at the request of "Kevin."[15]

19. Jallaludin Bhai acted under the mistaken belief that his actions were not initiating actual transactions, but instead were artificial actions initiated at MoneyGram's direction which were required to validate the repair of the MoneyGram device.

20. Believing it to be a "test," no balancing of the underlying trust account was undertaken by KNJ, Inc.

21. Nevertheless, just as had been warned in 2010, the "test transactions" were, in reality, actual transactions which resulted in the transfer of money from MoneyGram to an unknown third party.

22. The Defendant contacted local police once the theft was actually detected, but such contacts proved unfruitful.

23. As a result of these transactions, KNJ, Inc. could not account for all trust funds due and owing to MoneyGram.[16]

24. Jallaludin Bhai's compliance with the telephonic requests to conduct "test transactions" resulted in a breach of fiduciary duty by KNJ, Inc. to MoneyGram and constituted a breach of the Fraud Compliance Agreement.[17]

25. The breach of fiduciary duty by KNJ, Inc. triggered a monetary liability under the guaranty obligation executed by the Defendant in her individual capacity.

26. On February 13, 2015, MoneyGram filed a lawsuit against KNJ, Inc. and the Defendant in the 211th Judicial District Court in and for Denton County, Texas under Cause No. 15-01320-211 (the "State Court Litigation"), seeking recovery of the amount of the missing trust funds and other related remedies.[18]

---

[15] *Id.* at ¶¶ 11, 28.

[16] *Id.* at ¶ 13.

[17] *Id.* at ¶ 12, 14.

[18] *Id.* at ¶ 16.

27. The Defendant, Ms. Khairun Bhai, and MoneyGram were thereby cast as adversaries in the State Court Litigation.[19]

28. The 211th Judicial District Court entered a Final Summary Judgment on August 28, 2015 against the Defendant (the "State Court Judgment").

29. Pursuant to the State Court Judgment, the Defendant in her individual capacity owes a debt of $29,002.08, plus court costs and post-judgment interest, to MoneyGram.[20]

30. The amounts owing under the State Court Judgment by the Defendant remain unpaid.[21]

31. On that same date, the Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court.[22]

32. On December 3, 2015, MoneyGram initiated this adversary proceeding through the filing of its original Complaint to Determine Dischargeability.[23]

33. A First Amended Complaint was subsequently filed by MoneyGram in this adversary proceeding on June 28, 2016, whereby it sought a determination that the Defendant's debt evidenced by the State Court Judgment should be declared nondischargeable as a fraud or defalcation by a fiduciary or as an embezzlement pursuant to 11 U.S.C. § 523(a)(4) or as a willful and malicious injury pursuant to 11 U.S.C. § 523(a)(6).[24]

---

[19] *Id.* at ¶ 17.

[20] *Id.* at ¶ 18.

[21] *Id.* at ¶ 20.

[22] *Voluntary Petition* filed by the Debtor on August 28, 2013 [dkt #1] in case no. 15-41547.

[23] Dkt #1.

[24] Dkt #12.

34. During the scheduled discovery period in this adversary proceeding,[25] the Defendant was served with MoneyGram's Request for Admissions.[26] The Defendant did not respond or object to the various requests.[27]

35. On September 2, 2016, MoneyGram filed a motion for summary judgment, arguing that under the principles of collateral estoppel, all of the facts necessary to render Bhai's debt nondischargeable under 11 U.S.C. § 523(a)(4) and (a)(6) had been established either in the State Court Litigation or by the Defendant's deemed admissions.[28]

36. The Defendant filed a response to the summary judgment motion on October 1, 2016, contending that collateral estoppel cannot be properly applied since the bankruptcy filing occurred virtually simultaneously with the entry of the State Court Judgment.[29]

37. As a prelude to the determination of the summary judgment motion, Bhai filed a motion to withdraw the deemed admissions on September 21, 2016[30] which was subsequently opposed by MoneyGram.[31]

38. After a hearing on the motion to withdraw the deemed admissions, the Court entered an order on January 31, 2017 wherein Bhai's motion to withdraw and set aside the deemed admissions was granted in part and denied in part, allowing only six of the 21 admissions to be withdrawn due solely to the impropriety of the underlying requests and not upon any entitlement to relief based upon the Defendant's conduct.[32]

---

[25] Following an initial management conference on April 5, 2016, the Court issued a scheduling order [dkt #9] with a discovery deadline of September 30, 2016.

[26] Defendant's admission in ¶ 1 of the Defendant's Motion to Withdraw and Set Aside Deemed Admissions filed on September 30, 2016 [dkt #23].

[27] *Id.*

[28] Dkt #16.

[29] Dkt #28.

[30] *Defendant's Motion to Withdraw and Set Aside Deemed Admissions* [dkt #23].

[31] *Objection* [dkt #30].

[32] *Order Granting In Part and Denying In Part Defendant's Motion to Withdraw and Set Aside Deemed Admissions* [dkt #42].

39. On January 31, 2017, the Court entered an order wherein the Plaintiff's motion for summary judgment was granted in part and denied in part, determining that while collateral estoppel did apply to the State Court Litigation, and that the Defendant is liable for the debt evidenced by the State Court Judgment, MoneyGram was not entitled as a matter of law to a determination that the debt evidenced by the State Court Judgment was nondischargeable under §§ 523(a)(4) and (a)(6).[33]

40. On August 22, 2017, a trial regarding the complaint was conducted. At the conclusion of the trial, the parties were granted leave to submit post-trial briefs. At the end of that briefing period, the matter was taken under advisement.

41. The Plaintiff failed to demonstrate by a preponderance of the evidence that the transfer of funds to the unknown party by an employee of the Defendant's company was an appropriation of funds by the Defendant.

42. The Plaintiff failed to demonstrate by a preponderance of the evidence that the Defendant's omission in failing to prevent the transfer of funds to the unknown party by her company's employee involved bad faith, moral turpitude, or other immoral conduct.

43. The Plaintiff failed to demonstrate by a preponderance of the evidence that the Defendant's omission in failing to prevent the transfer of funds to the unknown party by her company's employee was an intentional act committed by the individual Defendant.

44. The Plaintiff failed to demonstrate by a preponderance of the evidence that the Defendant's omission in failing to prevent the transfer of funds to the unknown party by her company's employee constituted an act of gross negligence.

45. The Plaintiff failed to demonstrate by a preponderance of the evidence that the Defendant's omission in failing to prevent the transfer of funds to the unknown party by her company's employee constituted an extreme departure from the

---

[33] "It is incumbent upon MoneyGram [as the federal summary judgment movant] to identify those undisputed material facts upon which the [state court] summary judgment was based. Without them, the only significant issue regarding Bhai's liability in an individual capacity which is precluded from relitigation under the principles of collateral estoppel is the existence of the debt owing by Bhai in an individual capacity to MoneyGram. That singular fact is insufficient to warrant the granting of summary judgment to MoneyGram under any of the § 523(a) exceptions to discharge which it has alleged. . . ." *Memorandum of Decision Regarding Plaintiff's Motion for Summary Judgment* [dkt #43] at p. 14.

standard of ordinary care or a gross deviation from a reasonable standard of conduct.

46. The Plaintiff failed to demonstrate by a preponderance of the evidence that the Defendant's omission in failing to prevent the transfer of funds to the unknown party by her company's employee constituted an act of severe recklessness.

47. The Plaintiff failed to demonstrate by a preponderance of the evidence that, in light of Mr. Bhai's conviction that he was participating in a legitimate MoneyGram activity to solve problems with the MoneyGram device, the Defendant's omission in failing to prevent the transfer of funds to the unknown party by her company's employee was not a highly unreasonable omission or one that constituted an extreme departure from the standard of ordinary care.

48. Under the circumstances presented, while unfortunate and a clear breach of contractual duties, the Defendant's omission in failing to prevent the transfer of funds to the unknown party by her company's employee three and one-half years after the inception of the contractual relationship was inadvertent, or at worst, negligent, but cannot be fairly characterized as the result of a conscious disregard by the Defendant of a substantial and unjustifiable risk that such a transfer would occur.[34]

49. The Plaintiff failed to demonstrate by a preponderance of the evidence that the Defendant's failure to prevent the transfer of funds to the unknown party by her company's employee constituted an appropriation of funds by the Defendant.

50. The Plaintiff failed to demonstrate by a preponderance of the evidence that the transfer of funds to the unknown party was for the use or benefit of the Defendant.

---

[34] Because this is a mixed question of law and fact based upon applicable law under § 523(a)(4), it is not a proper subject for a stipulation and the Court is not bound by the parties' stipulation on this issue. *Estate of Sanford v. Commissioner*, 308 U.S. 39, 51 (1939); *Swift & Co. v. Hocking Valley Ry.*, 243 U.S. 281, 289 (1917). *See also*, *Carter v. Luminant Power Services Co.*, 714 F.3d 268, 270 n.3 (5th Cir. 2013) (citing *Equitable Life Assur. Soc. of U.S. v. MacGill*, 551 F.2d 978, 983 (5th Cir.1977)). As the Tenth Circuit has succinctly noted,

> Parties may not stipulate the findings of fact upon which conclusions of law and the judgment of the court are to be based. Parties may by stipulation establish evidentiary facts to obviate the necessity of offering proof, but based thereon the court must itself find the ultimate facts upon which the conclusions of law and the judgment are based.

*O'Connor v. City and County of Denver*, 894 F.2d 1210, 1225–26 (10th Cir.1990).

51. Even if the transfer of funds could be construed as an appropriation of funds, the Plaintiff failed to demonstrate by a preponderance of the evidence that the Defendant's failure to prevent the transfer of funds by her company's employee was conducted with a fraudulent intent.

52. The Plaintiff failed to demonstrate by a preponderance of the evidence that, at the time that the debt was created, the Defendant's failure to prevent the transfer of funds to the unknown party by her company's employee was performed with the specific subjective intent to cause injury to the Plaintiff.

53. The Plaintiff failed to demonstrate by a preponderance of the evidence that the Defendant's failure to prevent the transfer of funds to the unknown party by her company's employee constituted a deliberate or intentional act by the Defendant that led to the Plaintiff's injury.

54. The Plaintiff has failed to demonstrate by a preponderance of the evidence that the Defendant's failure to prevent the transfer of funds to the unknown party by her company's employee under all of the given circumstances created an objective substantial certainty of harm to the Plaintiff.

55. While the circumstances demonstrate that the Plaintiff has suffered a financial loss that the Defendant was contractually obligated to prevent, that fact cannot be permitted to stand in lieu of the required degree of proper proof pertaining to the Defendant's conduct and intentions under these circumstances, particularly in light of the Bankruptcy Code's directive that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor.

56. To the extent any of these findings of fact constitute conclusions of law, the Court expressly adopts them as such.

## CONCLUSIONS OF LAW

1. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1334 and 11 U.S.C. § 523. This Court has personal jurisdiction over the parties to this adversary proceeding.

2. This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I) and (O) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

3. The complaint filed by the Plaintiff seeks a determination that the debt which is owed to it by the Defendant should be accepted from discharge under 11 U.S.C. § 523(a)(4) and/or § 523(a)(6).

4. In seeking to accept the debt owing to it from the scope of The discharge granted to the Defendant, the Plaintiff assumes the burden of proof under a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

5. All exceptions to discharge under § 523 "must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start."[35] *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997).

*Nondischargeability Under § 523(a)(4): Debt Arising from Fraud or Defalcation in a Fiduciary Capacity.*

6. The Plaintiff's amended complaint seeks a determination that the debt which the Defendant admittedly owes to it should be excepted from discharge under § 523(a)(4) as a debt arising from fraud or defalcation in a fiduciary capacity.

7. 11 U.S.C. § 523(a)(4) states that:

   (a) A discharge under Section 727 . . . of this title does not discharge an individual debtor from any debt . . .

   (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

8. The Fifth Circuit has noted "that this discharge exception was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." *Miller v. J.D. Abrams Inc. (Matter of Miller),* 156 F.3d 598, 602 (5th Cir. 1998), *cert. denied*, 526 U.S. 1016 (1999) (internal quotations omitted).

---

[35] However, a fresh start is not promised to all who file for bankruptcy relief, but only to "the honest but unfortunate debtor." *Grogan*, 498 U.S. at 286-87.

9. Whether the actions of an individual were taken in a fiduciary capacity for the purposes of § 523(a)(4) is determined by federal law. *FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 620 (5th Cir. 2011).

10. However, "state law is important in determining whether or not a trust obligation exists." *Gupta v. Eastern Idaho Tumor Institute, Inc. (In re Gupta)*, 394 F.3d 347, 350 (5th Cir. 2004).

11. The Fifth Circuit has discussed the concept of a fiduciary under § 523(a)(4) in the following terms:

    > [T]he concept of fiduciary under § 523(a)(4) is narrower than it is under general common law. Under § 523(a)(4), "fiduciary" is limited to instances involving express or technical trusts. The purported trustee's duties must, therefore, arise independent of any contractual obligation. The trustee's obligations, moreover, must have been imposed prior to, rather than by virtue of, any claimed misappropriation or wrong. Constructive trusts or trusts *ex malificio* thus also fall short of the requirements of § 523(a)(4).

    *Texas Lottery Comm'n v. Tran (In re Tran),* 151 F.3d 339, 342-43 (5th Cir. 1998).

12. Thus, the trust relationship must exist prior to the creation of, and without reference to, the indebtedness in question. *Angelle v. Reed (In re Angelle)*, 610 F.2d 1335, 1338 (5th Cir. 1980).

13. "An express trust traditionally includes (1) an explicit declaration of a trust, (2) a defined trust res, and (3) an intent to create a trust relationship. To create an express trust, the legal and equitable title to the trust res must be separate, the former being vested in a trustee and the latter in a beneficiary. . . . [T]he express trust may be created by an express agreement, the direct acts of the parties, or a written instrument." *McCoun v. Rea (In re Rea)*, 245 B.R. 77, 87 (Bankr. N.D. Tex. 2000); *Hollis v. Hollis (In re Hollis)*, 2011 WL 1168403, at *15-16 (Bankr. E.D. Tex. Mar. 29, 2011).

14. While it is undisputed that KNJ, Inc. was a fiduciary to MoneyGram under the Master Trust Agreement, the Plaintiff's contention that the fiduciary duty assumed by KNJ, Inc. can be extended to the individual Defendant through the general contractual provisions of her guaranty agreement is problematic.

15. Such a contention treads upon that fine line which requires an intense examination of the nature of the obligation in order to determine whether the requisite fiduciary obligation under federal law has been properly invoked. Such jurisprudence is rooted in a series of United States Supreme Court decisions in which the Court found that even agreements that specifically incorporated language imposing a trust, which this guaranty agreement did not, were found to have not actually created a fiduciary obligation that would preclude the discharge of a resulting indebtedness. *See, e.g., Chapman v. Forsyth*, 43 U.S. (2 How.) 202, 298 (1844); *Upshur v. Briscoe*, 138 U.S. 365 (1891); *Davis v. Aetna Acceptance Cor*p., 293 U.S. 328 (1934).

16. Similarly, in an unpublished 1992 case containing similar facts to this case, a Texas bankruptcy court held that an individual's execution of a guaranty agreement pertaining to a trust agreement for the sale of money orders was insufficient to create a fiduciary relationship with the money order company for the purposes of § 523(a)(4). *Travelers Express Co., Inc. v. Woods*, 1992 WL 196589, at *4 (Bankr. N.D. Tex., Feb. 14, 1992).[36] *See also, Rentrak Corp. v. Strait (In re Strait),* 2015 WL 757628 (Bankr. D. Vt. Feb. 20, 2015).

17. As one court described this precise scenario:

> The creditor contends that the debtor evinced intent to serve as a fiduciary when he agreed to act as primary guarantor of the agreements. But one who signs as primary guarantor to a fiduciary's agreement does not thereby make himself a fiduciary of the original agreement. . . . Although the debtor did agree to guarantee the corporation's performance he did not agree to act as a fiduciary as required by § 523(a)(4).

*Congress Fin. Corp. v. Levitan (In re Levitan)*, 46 B.R. 380, 387 (Bankr. E.D.N.Y. 1985).

18. Thus, it is not the broad, general language of the guaranty agreement which could legitimately impose a fiduciary capacity upon the individual Defendant sufficient for the purposes of § 523(a)(4).

---

[36] In *Woods*, an individual's husband operated a money order business as a sole proprietor and had executed a formal trust agreement with a money order vendor. The wife executed the guaranty agreement accompanying the trust agreement, guaranteeing full performance of the trust agreement. The Court ruled that, although the wife was a guarantor of the performance of the duties under the trust agreement, she was never in a fiduciary relationship with the Plaintiff. Although the husband was the formal trustee under the trust agreement in his individual capacity, such fiduciary capacity was waived by the money order company under the particular circumstances of the case.

19. However, because a corporation can act only through its officers and employees, jurisprudence certainly exists, including some decisions of this Court, to support the proposition that an individual debtor may act in a fiduciary capacity for the purposes of § 523(a)(4) if that individual is charged with, but fails to fulfill, a fiduciary obligation owed by his/her corporation, particularly if the individual personally benefits from the failure.[37]

20. In this instance, there is no evidence that the Defendant benefitted personally from any breach of fiduciary duty by the corporation.

21. Furthermore, though the evidence indicates that KNJ, Inc. utilized only one bank account for the transmittal of funds to MoneyGram, the evidence regarding MoneyGram's knowledge and/or implied consent to that structure is insufficient to conclude that the fiduciary duty referenced in the Master Trust Agreement was waived by MoneyGram.

22. Nevertheless, regardless of whether the Defendant's supervisory omissions arose in a fiduciary capacity, the Plaintiff has failed to prove by a preponderance of the evidence that the Defendant's actions and/or omissions were conducted with the requisite mental state necessary to constitute a defalcation by the Defendant under § 523(a)(4).

23. Until 2013, a defalcation under § 523(a)(4) in this circuit required the establishment of a "willful neglect of duty" that was "essentially a recklessness standard." *Schwager v. Fallas (In re Schwager),* 121 F.3d 177, 185 (5th Cir. 1997).

24. Willfulness in that context had been "measured objectively by reference to what a reasonable person in the debtor's position knew or reasonably should have known." *Harwood*, 637 F.3d at 624 (citing *Office of Thrift Supervision v. Felt (In re Felt)*, 255 F.3d 220, 226 (5th Cir. 2001)).

---

[37] For example, courts have "not hesitated to conclude that debts arising from misappropriation by persons serving in a traditional, pre-existing fiduciary capacity, as understood by state law principles, are non-dischargeable." *Shcolnik v. Rapid Settlements, Ltd. (In re Shcolnik)*, 670 F.3d 624, 628 (5th Cir. 2012). This general principle undergirds the holding, though issued in a default judgment context, in *MoneyGram Payment Sys., Inc. v. Hernandez (In re Hernandez)*, 2008 WL 597835 (Bankr. E.D. Va. Mar. 3, 2008) – a case relied upon by the Plaintiff.

25. In 2013, however, the United States Supreme Court rejected an objective recklessness standard in favor of a heightened culpability standard for defalcation in this context.

26. In its unanimous decision in *Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013), the Supreme Court declared that "defalcation" for the purposes of § 523(a)(4) "includes a culpable state of mind requirement" involving "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Id*. at 269.

27. According to *Bullock*, "where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term [defalcation] requires an intentional wrong." *Id*. at 273.

28. Such an intentional wrong may encompass not only conduct which the fiduciary knows is improper, but also reckless conduct, such as when a fiduciary "consciously disregards (or is willfully blind to) a substantial and unjustifiable risk" that his conduct will result in a breach of fiduciary duty. *Id*.

29. In requiring a higher degree of fault for a finding of a defalcation, similar to its "statutory neighbors" of fraud, embezzlement and larceny listed in § 523(a)(4), without imposing an actual requirement of specific intent to establish a defalcation, the Supreme Court adopted a standard of recklessness "of the kind set forth in the Model Penal Code § 2.02(2)(c)."[38]

30. This "severe recklessness" standard tracks the showing required to demonstrate scienter in federal securities cases.[39]

---

[38] Model Penal Code § 2.02(2)(c) states that:

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

MODEL PENAL CODE § 2.02(2)(c) (Thomson Reuters, Westlaw through 2015).

[39] Scienter, in the context of securities fraud, is "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).

31. Utilizing the MPC definition of recklessness and analyzing the defalcation standard to scienter determinations in federal securities cases is an effort to exclude that type of recklessness arising as a consequence of mere negligence or inadvertence.

32. As recognized in securities law cases in the Fifth Circuit, this type of "severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involved not merely simple or even inexcusable negligence, but an extreme departure from the standard of ordinary care, and that present a danger of misleading buyers or sellers [of securities] which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Abrams v. Baker Hughes, Inc*., 292 F.3d 424, 430 (5th Cir. 2002).

33. Accordingly, since 2013, "[o]nly a defalcation committed with those states of mind of intentional fraud, criminal recklessness or moral turpitude satisfies *Bullock*." *Kahkeshani v. Hann (In re Hann)*, 544 B.R. 326, 333 (Bankr. S.D. Tex. 2016).

34. Because the Plaintiff has failed to demonstrate that the Defendant acted with a culpable state of mind required to establish the existence of a defalcation under *Bullock*, the Plaintiff's request to except the debt allegedly owed to it by the Defendant as a debt arising from defalcation by a person acting in a fiduciary capacity must be denied.

*Nondischargeability under § 523(a)(4)*: *Debt Arising From Embezzlement.*

35. 11 U.S.C. § 523(a)(4) provides that "A discharge under 11 U.S.C. § 727 does not discharge an individual from a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny."

36. "Embezzlement is defined for the purposes of § 523(a)(4) as the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *Miller v. J.D. Abrams Inc. (Matter of Miller),* 156 F.3d 598, 602 (5th Cir. 1998), *cert. denied*, 526 U.S. 1016 (1999).

37. "Embezzlement, however, is not limited to situations in which one person is entrusted with the property of another. It also applies where . . . a person lawfully obtains property, but then fraudulently appropriates it for his or her own use." *Powers v. Caremark, Inc. (In re Powers)*, 261 Fed. App'x. 719, 723 (5th Cir. 2008).

38. "Given that a debtor has lawful control of the property, embezzlement then requires three elements: (1) appropriation of funds by the debtor; (2) for the debtor's use or benefit; and (3) with fraudulent intent." *Andra Group, L.P. v. Gamble-Ledbetter (In re Gamble-Ledbetter)*, 419 B.R. 682, 696 (Bankr. E.D. Tex. 2009) (citing *Rainey v. Davenport (In re Davenport),* 353 B.R. 150, 200 (Bankr. S.D. Tex. 2006)).

39. Because the Plaintiff has failed to demonstrate by a preponderance of the evidence the existence of any of the requisite elements, the Plaintiff's request to except the debt owed to it by the Defendant as a debt arising from an embezzlement pursuant to § 523(a)(4) must be denied.

*Nondischargeability Under § 523(a)(6): Debt Arising from Willful and Malicious Injury*

40. The Plaintiff further contends that the debt owed to it should be excepted from discharge as a debt arising from a willful and malicious injury inflicted upon it by the Debtor-Defendant.

41. Section 523(a)(6) of the Bankruptcy Code provides that:

    (a) A discharge under Section 727 . . . of this title does not discharge an individual debtor from any debt . . .

      (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

42. In *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the United States Supreme Court significantly narrowed the scope of debts that could be deemed nondischargeable under § 523(a)(6).

43. The *Geiger* decision clearly requires that an actor inflict a deliberate or intentional injury, not merely that an actor take a deliberate or intentional act that leads to injury.

44. As subsequently interpreted by the Fifth Circuit, a recovery under § 523(a)(6) for a "willful and malicious injury" now requires proof that such injury arose from a deliberate and intentional act by a debtor that was inflicted under circumstances evidencing either: (1) an objective substantial certainty of harm; or (2) a subjective

motive to cause harm. *Miller v. J. D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998), *cert. denied, Miller v. J.D. Abrams, Inc.*, 526 U.S. 1016 (1999); *see also Caton v. Trudeau (In re Caton),* 157 F.3d 1026, 1029 (5th Cir. 1998).

45. The "objective substantial certainty" prong is a recognition of the evidentiary reality that defendants in a bankruptcy context rarely admit an intent to cause harm.

46. "A court is thus expected to analyze whether the defendant's actions, which from a reasonable person's standpoint were substantially certain to result in harm, are such that the court ought to infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff." *Mann Bracken, LLP v. Powers (In re Powers)*, 421 B.R. 326, 334-35 (Bankr. W.D. Tex. 2009), *citing Berry v. Vollbracht (In re Vollbracht)*, 276 Fed. App'x. 360, 362 (5th Cir. 2007).[40]

47. The Plaintiff has failed to demonstrate by a preponderance of the evidence the existence of a deliberate or intentional injury inflicted upon it by the Defendant.

48. Because the Plaintiff has failed to sustain its burden of proof that any portion of the indebtedness owed to it by the Defendant arose from the infliction of a "willful and malicious injury" by the Defendant, the Plaintiff's request to except the debt owed to it pursuant to § 523(a)(6) must be denied.

---

[40] "Injuries covered by §523(a)(6) are not limited to physical damage or destruction; harm to personal or property rights is also covered by §523(a)(6)." *Andra Group, L.P. v. Gamble-Ledbetter (In re Gamble-Ledbetter)*, 419 B.R. 682, 698-99 (Bankr. E.D. Tex. 2009).

## CONCLUSION

49. Because the Court concludes that the Plaintiff, MoneyGram Payment Systems, Inc., has failed to prove by a preponderance of the evidence that the asserted debt owed by Defendant, Ms. Khairun J. Bhai, arose from fraud or defalcation by a fiduciary, judgment must be rendered for the Defendant under § 523(a)(4).

50. Because the Court concludes that the Plaintiff, MoneyGram Payment Systems, Inc., has failed to prove by a preponderance of the evidence that the asserted debt owed by Defendant, Ms. Khairun J. Bhai, arose from an embezzlement, judgment must be rendered for the Defendant under § 523(a)(4).

51. Because the Court concludes that the Plaintiff, MoneyGram Payment Systems, Inc., has failed to prove by a preponderance of the evidence that the asserted debt arose from a willful and malicious injury inflicted upon it by the Defendant, Ms. Khairun J. Bhai, judgment must be rendered for the Defendant under § 523(a)(6).

52. Thus, all relief requested in the Plaintiff's First Amended Complaint filed in the above-referenced adversary proceeding shall be denied.

53. To the extent any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

54. An appropriate judgment shall be entered consistent with these findings and conclusions.

Signed on 12/21/2017

_____
THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE